UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
KENNETH BENSON,                    )
                                   )
             Plaintiff,            )
                                   )
        v.                         )   Civil Action No. 11-11935-JCB
                                   )
CAROLYN W. COLVIN,[1]              )
Acting Commissioner of Social Security, )
                                   )
             Defendant.            )
_____)

ORDER ON PLAINTIFFS' MOTION TO REVERSE THE COMMISSIONER'S DECISION
AND DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION
[Docket Nos. 20, 22]

March 29, 2013

Boal, M.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff Kenneth Benson's ("Benson" or "Plaintiff") application for Social Security Disability Insurance benefits ("DIB"). Benson asserts that the Commissioner's decision denying him such benefits – memorialized in a May 13, 2011 decision of an administrative law judge ("ALJ") – is in error, [Docket No. 20], and the Commissioner, in turn, has moved to affirm [Docket No. 22].[2] This Court heard oral argument

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Colvin is automatically substituted as the defendant.

[2] On January 30, 2013, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge for all purposes. Docket No. 18.

1

on the motions on March 27, 2013.  For the following reasons, this Court remands the case for reconsideration in light of the findings contained herein.

I.      **FACTS AND PROCEDURAL HISTORY**

    A.      Procedural History

Benson filed his application for DIB on November 3, 2008, claiming an inability to work since July 31, 2007 based on depression, back pain and cardiac problems.  (Administrative Record ("AR") 275-283, 321).  The application was denied initially and upon reconsideration.  (AR 139-140).  ALJ Rebekah Ross conducted a hearing on July 14, 2010, which Benson attended with his attorney.  (AR 82-138).  The ALJ received testimony from Benson and James D. Sarno, a vocational expert.  (Id.).  On August 13, 2010, the ALJ issued her decision finding Benson not disabled.  (AR 144-162).  On November 12, 2010, the Decision Review Board remanded the case back to the ALJ.  (AR 163-167).  In relevant part, the Decision Review Board directed the ALJ to "[f]urther evaluate the nature and severity of all the claimant's impairments at step 2 of the sequential evaluation process and beyond, including consideration of the claimant's obesity under the provisions of SSR 02-01p."  (AR 166).[3]

ALJ Ross conducted a new hearing on April 13, 2011, which Benson attended with his attorney.  (AR 36-81).  Benson, Sarno, and Dr. Alfred Jonas, a medical expert, testified.  (Id.).  On May 13, 2011, the ALJ issued a second opinion finding that Benson was not disabled.  (AR 14-35).  On September 2, 2011, the Appeals Council denied Benson's request for review,

---

[3] The Decision Review Board remanded the case for consideration by the ALJ for other issues.  However, Benson does not appeal the ALJ's subsequent consideration of these other issues.  As such, those issues have now been waived.  Soto-Cedeño v. Astrue, 380 Fed. Appx. 1, 3 (1st Cir. 2010) (citations omitted).

making the ALJ's decision the final decision of the Commissioner. (AR 1-4).

Benson filed this action on November 1, 2011. Docket No. 1.

B.      Background

Benson was forty-two years old on his alleged onset date. (AR 88, 277). Benson obtained a GED and attended one semester of community college. (AR 91-92). Benson's past relevant work included driving a tractor trailer and installing floors. (AR 322, 327). At the time of the 2010 hearing, he was 6' 1" tall and weighed 250 pounds. (AR 89).

C.      The Medical Evidence[4]

Benson has a history of coronary artery disease with multiple myocardial infarctions ("MIs"). He experienced an MI in early 2006, with subsequent stenting. (AR 511, 577, 897). In August of 2007, he underwent coronary artery bypass grafting to treat what may have been another MI. (AR 511, 577, 587, 678, 771, 806, 873, 897). He suffered an MI in January of 2009, with additional stenting. (AR 637, 771, 873, 897). It was subsequently determined in March of 2009 that his bypass graft was occluded, and this appears to have caused another MI. (AR 625, 771, 806, 873). The record reveals complaints of chest pain, that were often not cardiac in nature, as well as complaints of palpitations and shortness of breath, and a diagnosis of chronic obstructive pulmonary disease ("COPD"). (AR 443, 446-447, 457, 511-512, 569-571, 591, 878-879, 919, 926, 932).

Benson also has a history of lower back pain radiating into his legs and into his shoulder.

---

[4] The ALJ determined that Benson has the following severe impairments: degenerative disc disease, coronary artery disease, adjustment disorder, chronic obstructive pulmonary disease (COPD) and obesity. (AR 17). Because Benson only challenges the ALJ's decision as it relates to his obesity, the Court focuses on medical evidence of physical, not mental, impairments.

(AR 448, 573, 622, 674, 697, 755, 760, 898).  An MRI from 2004 showed an L5-S1 grade one spondylolisthesis (forward displacement of one vertebrae over another), bilateral L5 spondylolysis with stenosis of the L5 neural foramina, left greater than right, with no evidence of central spinal canal stenosis.  (AR 756, 761).  An MRI from December 8, 2008 revealed a grade one spondylolytic spondylolisthesis.  (AR 622).

On January 15, 2008, Benson presented to the Mount Auburn Hospital Emergency Room complaining of "excruciating" back pain.  (AR 573).  He was prescribed percocet and valium.  (AR 573).

On January 30, 2008, Ellen Krag, PA, reported that Benson appeared to be in "moderate to severe pain, antalgic gait noted."  (AR 698).  She recommended avoidance of heavy lifting.  (AR 697-698).

A disc disease questionnaire completed by Dr. Brian Kwon of New England Baptist Hospital on or about February of 2009 indicated that Benson experienced pain and weakness in his lower back and legs when walking and standing, and that surgery was being considered if his cardiac condition stabilized.  (AR 620).  Dr. Kwon noted that Benson reported that his back pain ranged from two to ten in a scale of one to ten, his leg pain ranged from four to ten, and that Benson's symptoms were consistent with his pathology in his spine.  (AR 622-623).

A disc disease questionnaire completed by Dr. Kwon in March of 2009 indicated that Benson experienced lower back and leg pain that was worse with standing and walking, and better with sitting.  (AR 674).  Dr. Kwon again noted that surgery was being considered if Benson's cardiac condition stabilized.  (AR 674).

The record also indicates that Benson was obese.  (AR 511, 756, 771).  Two medical

records describe him as mildly to moderately obese.  (AR 511, 756).  One record describes him as only slightly overweight and fairly fit looking.  (AR 760).  In July 2009, he was 6' 1" tall and weighed 275 pounds with a body mass index ("BMI") of 36+.  (AR 772).  During a consultative examination on February 5, 2011, Benson was noted to be 6' 1" tall and 252 pounds.  (AR 898).

On April 8, 2009, Dr. Marcia Lipski completed a physical residual functional capacity ("RFC") assessment on behalf of the Agency.  (AR 677-684).  Dr. Lipski concluded that Benson could lift up to twenty pounds occasionally and up to ten pounds frequently; that he could sit, stand, and/or walk for about six hours each in an eight-hour work day; that he could frequently balance and occasionally climb, stoop, kneel, crouch, and crawl; and, that he should avoid concentrated exposure to hazards.  (AR 678-681).

On July 9, 2009, Dr. Theresa Kriston completed a physical RFC assessment on behalf of the Agency.  (AR 770-777).  Dr. Kriston specifically noted Benson's obesity.  (AR 770-771).  Dr. Kriston concluded that Benson could lift up to twenty pounds occasionally and up to ten pounds frequently; that he could sit for about six hours and stand or walk for at least 2 hours each in an eight-hour work day; that he could occasionally climb, balance, stoop, kneel, crouch, and crawl; and that he should avoid concentrated exposure to hazards.  (AR 771-774).

On February 5, 2011, Benson underwent a consultative examination with Dr. Rakesh Dhar.  (AR 895-899).  Dr. Dhar noted that Benson reported that the intensity of his back pain ranged from "4-7/10."  (AR 898).  In addition, Dr. Dhar noted that Benson was independent in his activities of daily living and ambulation.  (AR 897).  Benson was able to drive, climb two flights of stairs, sit, stand, and walk up to twenty minutes.  (AR 897-898).  Benson's strength was 4+/5 in the upper and lower extremities.  (AR 899).  The range of motion in his cervical

spine was near full and non-tender. (AR 899). He had some limitation of motion in his thoracolumbar spine, as well as tenderness over his lumbosacral spine. (AR 899). Straight leg raising was positive on the left. (AR 899). The range of motion in his shoulders, elbows, wrists, hips, knees, and ankles was near full and non-tender. (AR 899). Dr. Dhar also noted that Benson walked with a slight left limp. (AR 898).

        D.        <u>Hearing Testimony</u>

At the first hearing, Benson testified that his biggest physical issue was "being able to stand up or walk for any appreciable time or distance" due to problems with his back, which also affected his legs and ankle. (AR 102-103). He stated that he could sometimes stand for up to one hour, but other times it was unbearable to be on his feet longer than five to fifteen minutes. (AR 106). He testified that on a "good day" his level of pain was about a four in a scale of one to ten. (AR 121). On a "bad day," his pain was a ten out of ten. (AR 121). He stated that there was always a constant low, dull aching pain right at the core of his spine. (AR 121).

Benson also testified to fatigue and shortness of breath. (AR 124-125). He further testified to experiencing atypical chest pain. (AR 125).

With respect to his weight, Benson testified that he weighed 250 pounds and had lost approximately forty pounds in the prior nine months. (AR 89). However, he stated that the loss of weight had not appreciably improved his day-to-day functioning. (AR 89-90).

At the April 13, 2011 hearing, Benson testified that his breathing problems gave him trouble with climbing stairs and "major exertion." (AR 42). He testified that his pain increased with standing, walking, being on his feet for any length of time, and increased activity. (AR 52). He testified he could stand for five to ten minutes at one time. (AR 51). He also testified that he

experienced atypical chest pain. (AR 54-55). In addition, he testified that he was on a cardiac diet and had lost forty three pounds in the prior year and a half. (AR 46). He also testified that he had been cleared for back surgery but that he could not schedule it until he found a stable place to live and recover. (AR 48).

Dr. Alfred Jonas testified at the April 13, 2011 hearing as a medical expert. (AR 56). Dr. Jonas was a medical doctor and board certified psychiatrist. (AR 56-57). He testified that he would indicate if anything the ALJ asked him fell outside of his expertise. (AR 57). Dr. Jonas testified that he had reviewed the evidence in Benson's file. (AR 56). In response to the ALJ's request that Dr. Jonas describe the Plaintiff's medically determinable impairments, Dr. Jonas testified that Benson had cardiac problems, and that he had undergone both stenting and a bypass graft. (AR 57). Dr. Jonas added that Benson's ejection fractions[5] were normal. (AR 57). Dr. Jonas stated that it was not clear from the record what limitations should flow specifically from Benson's cardiac condition. (AR 58). Dr. Jonas testified that Benson also had COPD. (AR 58). His pulmonary function tests were normal. (AR 58). Overall, Dr. Jonas testified that Benson was probably limited from engaging in heavy exertion. (AR 58). Dr. Jonas also noted Benson's complaints of lower back pain. (AR 58). Dr. Jonas did not perceive any limitations attributable to Plaintiff's lower back pain based upon the record. (AR 58).

The ALJ posed the following hypothetical question to Dr. Jonas:

Q    All right, so doctor, adding up all of - I'll give it to you all as a package, as a potential residual functional capacity for Mr. Benson being limited to sedentary work, which basically means that he's mostly sitting down.

---

[5] An "ejection fraction" is the measurement of the percentage of blood leaving someone's heart each time it contracts. See Mayo Clinic, Ejection fraction: What does it measure?, http://www.mayoclinic.com/health/ejection-fraction/AN00360.

>   Stand, walk up to two hours, six hours sitting, but would give him the ability every 30 minutes of sitting he'd be able to stand up or change his position every five minutes or so, but staying on task. So, it would have to be a job that allows for that. Unskilled work with simple tasks, only occasional changes and occasional judgment or decision making, no interaction with the general public, only occasional superficial interaction with co-workers and supervisors, and must avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dust, and gases, and hazards such as machinery and heights. Based on your review of the entire medical record, would Mr. Benson be capable of that type of work?
>
> A.   Yes.

(AR 70).

The ALJ also posed the following hypothetical question to the vocational expert ("VE"):

> Q   With the following residual functional capacity, this hypothetical individual is limited to sedentary work with the following additional limitations. This person requires a sit-stand option, such that they'd mostly be sitting, but after a half hour, they can stand and move for five minutes or so. Is limited to work with only occasional - would only occasionally climb stairs, never climb ropes, ladders, scaffolds, occasionally balance, stoop, kneel, crouch, crawl. Must avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dust, gases, hazards such as machinery and heights. Is limited to unskilled work with simple tasks, only occasional changes in the work setting, only occasional judgment or decision making, no interaction with the general public, and only occasional superficial interaction with co-workers and supervisors. And the past work that you had identified last time was truck driver and floor installer. And I believe, both of these were a higher exertional level than sedentary, so the only question before you now, is whether there is other work available to this hypothetical individual?
>
> A.   Yes, your Honor, at the sedentary level.

(AR 75-76). The VE identified the potential jobs as a final assembler, document preparer/scanner, PC board assembly inspection and hand trimmer. (AR 76-78).

Upon questioning by Benson's counsel, the VE testified that no jobs would be available for an individual who needed to take one to two breaks per day for one hour, which would allow

for the individual to lie down.  (AR 78-79).  The VE also testified that no work would be available for an individual with a marked limitation in completing a normal workday and workweek due to psychological symptoms and who would be unable to perform at a consistent pace without an unreasonable number and length of rest periods.  (AR 79-80).

## II.     STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence.  See 42 U.S.C. §§ 405(g) and 1383(c)(3).  Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion.  Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  The Supreme Court has defined substantial evidence as "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts.  Rodriguez, 647 F.2d at 222; Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987).  A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim.  See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).  In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing." 42 U.S.C. § 405(g).

**III. DISCUSSION**

An individual is entitled to DIB benefits if, among other things, he has an insured status and, prior to its expiration, is disabled. See 42 U.S.C. § 423(a)(1)(A) and (E). Plaintiff's insured status is not challenged.

    A.    <u>Disability Standard and the ALJ's Decision</u>

The Social Security Act (the "Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). <u>See</u> also 42 U.S.C. § 1382c(a)(3)(A) (similar). An individual is considered disabled under the Act

> only if his physical and mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). <u>See</u> <u>generally</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If he does not have an impairment of at least this degree of severity, he is automatically not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so

serious a degree of severity, the claimant is automatically found disabled.

. . . .

Fourth . . . does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so he is disabled; if not he is not disabled.

Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

At step one, the ALJ found that Benson had not engaged in significant gainful activity since July 31, 2007, the alleged onset date. (AR 17). At step two, the ALJ found that Benson suffered the severe impairments of degenerative disc disease, coronary artery disease, adjustment disorder, COPD, and obesity. (AR 17). At step three, the ALJ held that Benson's impairments did not meet or medically equal any entry on the Listing of Impairments. (AR 17-19). In assessing residual functional capacity, the ALJ found that Benson was limited to sedentary work, except that he required the option to change positions from sitting to standing for five minutes every thirty minutes, that he should never climb ropes, ladders or scaffolds, and should only occasionally climb stairs or ramps, balance, stoop, kneel, crouch or crawl; and that he must avoid concentrated exposure to extreme could and extreme heat, fumes, odors, dusts and gases, and hazards such as machinery and heights. (AR 19). She found that Benson was further limited to unskilled work requiring only simple, repetitive tasks, with only occasional changes in the workplace and only occasional judgment and/or decision making; and should have no interaction with the general public and only occasional superficial interaction with co-workers or supervisors. (AR 19). At step four, the ALJ found that Benson was unable to perform his past relevant work as a tractor-trailer driver and floor layer. (AR 28-29). At step five, the ALJ

11

found that, in light of Benson's age, RFC, education, and work experience, and based on testimony by a vocational expert, he was able to perform other work existing in significant numbers in the national economy. (AR 29-30). Accordingly, the ALJ found that Benson was not disabled. (AR 30).

B.     Plaintiff's Challenge to the ALJ's Decision

The Decision Review Board instructed the ALJ, upon remand, to "[f]urther evaluate the nature and severity of all the claimant's impairments at step 2 of the sequential evaluation process and beyond, including consideration of the claimant's obesity under the provisions of [Social Security Ruling] SSR 02-01p." (AR 166). Benson argues that the ALJ failed to consider his obesity, pursuant to the remand order's specific instructions, when determining his ability to perform substantial gainful activity. Mem. at 9.[6] This Court finds that the ALJ's failure to articulate any analysis regarding the impact of Benson's obesity necessitates remand.

Obesity was formerly an impairment set forth in the Listings. However, it was removed from the Listings effective October 25, 1999. See Carbonell v. Astrue, No. 08-CV-661, 2010 WL 1507013, at *8 (N.D.N.Y. Mar. 31, 2010). Nevertheless, the Social Security Administration directs ALJs to consider the effects of a claimant's obesity at all stages of the disability determination process, including when assessing a claimant's RFC. SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). Obesity itself may cause limitations in "exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling," as well as in "postural functions, such as climbing, balance, stooping, and crouching." Id. It may also cause fatigue,

---

[6] "Mem." refers to the Memorandum of Law in Support of Plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security Administration. Docket No. 21.

which affects the claimant's "physical and mental ability to sustain work activity." Id. The "combined effects of obesity with other impairments may be greater than might be expected without obesity." Id. For example, "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." Id. "Although 'there is no particular mode of analysis,', the 'ALJ must still 'consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation.'" Miller v. Astrue, No. 2:10-cv-41, 2011 WL 3439273, at *3 (D.N.D. July 13, 2011) (quoting Bledsoe v. Barnhardt, 165 Fed. Appx. 408, 411-12 (6th Cir. 2006); Norman v. Astrue, 694 F. Supp. 2d 738, 741 (N.D. Ohio 2010)).

Here, the ALJ found that Benson was obese and that his obesity was a severe impairment. (AR 17). However, her otherwise thorough decision contains no other mention or consideration of the impact that Benson's obesity would have on his ability to work, either considered alone or in combination with his other recognized severe impairments. During the hearing, the ALJ did not ask Benson, the VE or the medical expert any questions regarding the impacts, if any, of Benson's obesity on his other impairments or his ability to work.

Some courts have held that the ALJ's failure to explicitly address obesity is not necessarily fatal, reasoning that obesity is indirectly considered if the ALJ adopts limitations suggested by examining doctors. See, e.g., Skarbek v. Barnhart, 105 Fed. Appx. 836, 840 (7th Cir. 2004); see also Carbonell, 2010 WL 1507013 at *9 (collecting cases). Other courts have demanded that the ALJ must clearly indicate whether he or she considered obesity when assessing a claimant's limitations. See, e.g., Norman, 694 F. Supp. 2d at 741-42; Hogarth v. Astrue, No. 07-cv-02106, 2009 WL 973557, at *7 (D. Colo. Apr. 9, 2009); Hogan v. Astrue, 491

F. Supp. 2d 347, 355 (W.D.N.Y. 2007).  Courts have also required that the ALJ ask medical and vocational experts to consider the claimant's obesity in determining whether other work is available to the claimant.  See, e.g., Miller, 2011 WL 3439273 at * 4.

The Court finds that the better practice is to require the ALJ to provide an explanation.  That explanation may be brief, but it must discuss whether obesity exacerbates the claimant's other impairments and the extent of the exacerbation.  See Holmes v. Astrue, No. 08-4624, 2010 WL 1730834, at * 7 (E.D. Pa. Apr. 28, 2010).

Here, it is possible that the ALJ in fact considered the impact of Benson's obesity.  However, the Court is unable to determine whether she did.  That analysis appears particularly important in this case, where the ALJ found that Benson's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Benson's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with her RFC assessment.  (AR 26).  The ALJ was not only required to determine whether Benson's back problems were likely to cause disabling pain, but also whether Benson's back problems and obesity, in combination, were likely to cause disabling pain.  Unfortunately, the ALJ did not document how she considered Benson's obesity in combination with his other impairments throughout the sequential analysis.

Because the Court is unable to determine whether the ALJ properly assessed the impact of Benson's obesity on his other physical or mental impairments, the case must be remanded for further analysis.  On remand, the ALJ shall explicitly examine the interplay of Benson's impairments, especially focusing on the impact of his obesity.

**IV.     CONCLUSION**

For the foregoing reasons, this Court denies the Commissioner's motion for an order affirming the Commissioner's decision, denies Benson's motion for an order reversing the decision of the Commissioner but remands the case for reconsideration in light of the findings contained herein.[7]

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

---

[7] Benson's motion asked for reversal of the Commissioner's decision and a finding that he is entitled to DIB benefits, but the Court finds that remand for further reconsideration is appropriate in this case.